**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 25, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

GARY RAYMOND AHIDLEY, JR.,

  Defendant - Appellant.

No. 06-2056

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-05-480-RB)**

---

Marc H. Robert, Assistant Federal Public Defender, Las Cruces, New Mexico for Defendant-Appellant.

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee

---

Before **KELLY**, **EBEL**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge

---

  Gary Raymond Ahidley, Jr., pleaded guilty to assault with a dangerous weapon (count 1), 18 U.S.C. § 113(a)(3), and assault resulting in serious bodily injury (count 2), 18 U.S.C. § 113(a)(6), charges resulting from a crime he

committed in Indian Country, 18 U.S.C. § 1153. Mr. Ahidley was sentenced to 41 months' imprisonment.

Mr. Ahidley's offenses implicated the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. Restitution was ordered in the amount of $22,537.13, with payment due immediately. Mr. Ahidley now appeals the restitution order. He contends that there was insufficient evidence to justify the amount of the restitution award and that the district court erred in imposing an immediate obligation to pay restitution, instead of establishing a reasonable restitution payment schedule after considering his financial resources and other legally-required factors.

We have jurisdiction under 28 U.S.C. § 1291. We **AFFIRM** the district court's order regarding the restitution amount. However, we conclude that the district court plainly erred in imposing an immediate-payment restitution obligation on Mr. Ahidley without consideration of the requisite MVRA factors. Accordingly, we **VACATE** that aspect of its restitution order and **REMAND** for the court to set an appropriate payment schedule.

## I. BACKGROUND

On October 13, 2004, Defendant-Appellant Ahidley and his girlfriend Ava Joyce Pollock, along with two of her children, were staying the night at his cousin's home. The couple had been drinking alcohol throughout the day, and Mr. Ahidley admitted he was intoxicated. According to Mr. Ahidley, Ms. Pollock

was belittling him and "fussing" about his haircut. R. vol. II, Presentence Investigation Report (PSR) ¶ 12. He attempted to hold her to talk, but she pulled away. This angered Mr. Ahidley, and he pulled a pocket knife out and stabbed Ms. Pollock. One of Ms. Pollock's children witnessed the incident. The stabbing occurred late in the evening, after 9:00 p.m.

Mr. Ahidley claims he did not intend to stab Ms. Pollock, but she was "standing too close." *Id.* After realizing she was injured, Ms. Pollock woke the defendant's sister, Tracey Ahidley, who also was staying at the home, and asked her for a ride to the hospital. Ms. Ahidley drove Ms. Pollock and her children to the hospital in Ruidoso, New Mexico.

The stab wound resulted in lacerations to Ms. Pollock's liver and kidney, and a penetrating trauma to her ascending colon. The serious nature of the wounds necessitated airlifting Ms. Pollock to a hospital in Lubbock, Texas for treatment and surgery. She remained in the hospital for one week. The treating physician estimated eight weeks for recuperation, but he expected a full recovery.

Mr. Ahidley pleaded guilty to the charges on July 11, 2005, and the U.S. Probation Office prepared a Presentence Investigation Report (PSR). The PSR noted that Mr. Ahidley was a highschool dropout who apparently had no specialized skills or training. Mr. Ahidley reported having no assets or liabilities. The Probation Office's examination of a credit report confirmed the latter (i.e., the absence of liabilities) and indicated that Mr. Ahidley had no credit at all. At

the time of his arrest, Mr. Ahidley was living with, and being supported by, family members. The PSR concluded that based upon his "financial situation," Mr. Ahidley "does not have the means to pay a fine." *Id.* ¶ 58.

However, the PSR noted that the MVRA was applicable to Mr. Ahidley's case and required the district court to order restitution for his criminal conduct, without consideration of Mr. Ahidley's ability to pay. The initial PSR stated that Mr. Ahidley owed restitution to Cardiology Consultants in the amount of $30 and Lubbock Diagnostic Radiology in the amount of $1,044. The report noted Medicaid officials would be submitting a request for restitution within 90 days.

On October 18, 2005, the Probation Office amended the PSR to include a request for restitution in the amount of $21,463.13 from the New Mexico Human Services Department, Medical Assistance Division ("NMHSD"). The claim was submitted on an apparent form letter,[1] stating that the NMHSD Medicaid program provided assistance to Ms. Pollock for treatment "that may be related to the accident that occurred on or around October 14, 2004." R. vol. II, PSR

---

[1]    The letter directly responded to the question of costs incurred by NMHSD for Ms. Pollock's treatment by stating a specific figure. However, it also included considerable boilerplate language that could not have been intended for the U.S. Probation Office; instead, it was better suited for communications with counsel of injured persons receiving Medicaid-funded medical treatment. For example, it cautioned the following: "At the moment you receive settlement proceeds or a court award *on behalf of your client* in this matter, a duty as an obligor arises on your part to repay [NM]HSD, after reasonable attorney fees and costs have been deducted, and prior to distribution of any remaining balance to *your client*." R. vol. II, PSR Addendum, NMHSD Letter at 1 (Oct. 18, 2005) (emphasis added).

Addendum, NMHSD Letter at 1 (Oct. 18, 2005).

On January 27, 2006, more than three months after the PSR was initially amended, Mr. Ahidley filed a sentencing memorandum objecting to certain aspects of the report. *See* R. vol. I, Doc. 34. Mr. Ahidley mentioned the PSR's restitution figure in a brief passage of his memorandum. *Id.* at 12. He devoted the bulk of his energy, however, to challenging the PSR's findings (a) that Ms. Pollock suffered "an injury between serious and life-threatening"; and (b) that the appropriate criminal history category was III. *Id.* at 4. On February 6, 2006, the Probation Office filed another addendum. It represented to the court that the addendum "fairly state[d] any objections that have been made." *Id.* vol. II, PSR Addendum at 1 (Feb. 6, 2006). The addendum addressed Mr. Ahidley's objections concerning the bodily injury enhancement and his criminal history. It made no mention, however, of the restitution amount. More specifically, it did not aver that Mr. Ahidley had raised any objections concerning restitution.

The district court sentenced Mr. Ahidley on February 10, 2006. During the sentencing hearing, when the topic turned to restitution, Mr. Ahidley's counsel interposed an objection.[2] He stated, "Your Honor, one thing about

---

[2] The government contends that Mr. Ahidley has effectively forfeited appellate review of this sufficiency-of-the-evidence issue concerning the restitution award by waiting until the sentencing proceedings to raise the issue. Mr. Ahidley insists, however, that he lodged an earlier objection addressing this issue in his January 2006 sentencing memorandum. We need not resolve this timing dispute. The district court chose to address Mr. Ahidley's objection

(continued...)

restitution. I assume that there's evidence supporting that. It was my intention to object to the restitution, if the Court doesn't have evidence before it supporting the restitution award." R. vol. III, Tr. Sentencing Hearing at 40-41 (Feb. 10, 2006). The court noted the objection, but referred to "numerous claims" listed in the PSR. *Id.* at 41. It ordered restitution in the amount cited by the Probation Office (i.e., $22,537.13), which the government noted was "around [$]21,000." *Id.*[3] The court declined to impose a fine "[b]ased upon Mr. Ahidley's resources."

---

[2](...continued)
concerning the restitution amount, which it was entitled to do. *See* Fed. R. Crim. P. 32(i)(1)(D) (providing that a court "may, for good cause, allow a party to make a new objection at any time before sentence is imposed"); *see also United States v. Chung*, 261 F.3d 536, 538-39 (5th Cir. 2001) (noting that the district court was required only "to make findings on timely objections and on objections that it considers in its discretion"). Therefore, we are content to reach the issue on appeal and apply the abuse-of-discretion standard of review.

[3] The district court's intentions regarding the amount of restitution that it was ordering are illuminated by this exchange between the court and the Assistant U.S. Attorney (AUSA):

> [AUSA]: My understanding is that Probation came up with a figure around the figure that the victim provided, which is around [$]21,000. I don't know the exact figure. It's around [$]21,000.
>
> [COURT]: And that's the figure that I saw in the report.
>
> [AUSA]: Yeah.
>
> [COURT]: And I will – I'm going to order that restitution. . . .

R. vol. III, Tr. Sentencing Hearing at 41 (Feb. 10, 2006). The "report" referenced
(continued...)

*Id.*

The district court was silent at the sentencing hearing regarding the schedule of payments – that is, about the timetable that would control Mr. Ahidley's obligation to pay the restitution. In its written judgment docketed three days after the sentencing, however, the district court specifically addressed this issue. It stated: "The restitution will be paid immediately." *Id.* Doc. 39, at 5.

## II. DISCUSSION

We review the legality of an order of restitution de novo. *See United States v. Nichols*, 169 F.3d 1255, 1278 (10th Cir. 1999). The factual findings supporting restitution are reviewed for clear error and the amount of restitution for abuse of discretion. *See United States v. Osborne*, 332 F.3d 1307, 1314 (10th Cir. 2003). Mr. Ahidley acknowledges that he did not preserve an objection to the restitution payment schedule; however, we may review for plain error. *See United States v. Overholt*, 307 F.3d 1231, 1253 (10th Cir. 2002); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").[4]

---

[3](...continued)
by the court was of course the PSR and the figure in it was $22,537.13.

[4]       The elements of the plain-error standard are now familiar. As the Supreme Court re-stated them in *Johnson v. United States*, 520 U.S. 461 (1997):

> Under that test, before an appellate court can correct an error not raised at trial, there must be (1) "error," (2) that is "plain,"

(continued...)

### A. Amount of Restitution

Because Mr. Ahidley was convicted of a crime of violence, the MVRA required the district court to order restitution to the victims of the offense. *See* 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(i) (requiring restitution for crimes of violence); *see also* 18 U.S.C. § 16 (defining "crime of violence"). The MVRA calls for restitution in the "full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). This amount should include costs for the necessary medical services for recovery. *See id.* § 3663A(b)(2)(A).

We have recognized that "the determination of restitution is not an exact science and that the calculation of a loss need not be precise." *United States v. Kravchuk*, 335 F.3d 1147, 1157 (10th Cir. 2003). In assessing the reliability of loss figures, courts are permitted to draw inferences from the totality of the circumstances through an exercise of "logical and probabilistic reasoning."

---

[4](...continued)
> and (3) that "affect[s] substantial rights." If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."

520 U.S. at 466-67 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993); internal quotation marks and citations omitted). An error is plain if it is "clear" or "obvious." *Id.* 467. And the Court in *Johnson* clarified that "it is enough that an error be 'plain' at the time of appellate consideration." *Id.* at 468.

*United States v. Atencio*, 435 F.3d 1222, 1232 (10th Cir. 2006) (internal quotations omitted; quoting *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995)) (noting that an appellate court will uphold a criminal conviction when the jury's factual inferences in support of the verdict are based upon logical and probabilistic reasoning).

Mr. Ahidley argues that the NMHSD letter requesting restitution in the amount of $21,463.13 is insufficient evidence on which to base the restitution amount because it does not detail the actual medical services rendered to Ms. Pollock. He further asserts that there is nothing to demonstrate that the treatment Ms. Pollock received, for which NMHSD claimed reimbursement, was limited to injuries caused by his offense. Mr. Ahidley hinges his argument on a Seventh Circuit decision and the equivocal language of the NMHSD letter, which requests reimbursement for treatment that "may be related to" the incident.

We are unpersuaded by Mr. Ahidley's arguments. Nothing in the record would have given the district court a reason to question the loss amount claimed by NMHSD. Furthermore, its probable accuracy was supported by inferences that the district court could have reasonably made from the evidence regarding the severity of Ms. Pollock's injuries and the medical interventions undertaken to treat her. In other words, the amount claimed by NMHSD for Ms. Pollock's medical care is consistent with the expenditures one might reasonably expect to be required to medically treat someone under similar circumstances.

In commenting on the extent of the injuries that Mr. Ahidley inflicted upon her, Ms. Pollock stated:

> [Mr. Ahidley] was the reason why I was in this hospital and had to have surgery done. I was in the hospital for about one week. I had surgery on my liver and kidney. My liver was stitched, but my kidney was left alone because it was cut in half. I was suppose [sic] to go for a check-up, but I haven't because of the cost. For about two months after I left the hospital a home health nurse came twice a day to clean my wounds on my stomach and right side.

R. vol. II, PSR ¶ 23-24. In sum, a hospital incurred costs to treat Ms. Pollock, including performing surgery to repair her vital organs, and providing her with a bed, and presumably nursing care, for one week. And, after the surgery, Ms. Pollock still needed costly treatment; home healthcare providers treated her for about two months. In light of these facts, the $21,463.13 figure that NMHSD claimed as reimbursement for covering the costs of Ms. Pollock's treatment seems entirely reasonable. And the district court could properly conclude by a preponderance of the evidence that it was accurate.

The Probation Office made a specific request to NMHSD for information related to costs that it incurred for the medical treatment of Ms. Pollock's injuries, which Mr. Ahidley caused on October 13, 2004. One cannot reasonably conclude that, in responding to this federal governmental entity, NMHSD would have elected to include costs associated with any other treatment. Nor has there been any credible suggestion that Ms. Pollock suffered injuries around October

13th that were unrelated to Mr. Ahidley's criminal conduct. The fact that NMHSD could have employed more unqualified language in its letter – something more direct than the phrase "may be related to" – is of little significance. Although directly addressing the question of costs incurred in connection with Ms. Pollock's treatment, NMHSD's correspondence was basically a generic form letter. *See supra* note 1. The district court properly relied upon the NMHSD letter in setting the amount of restitution.

Mr. Ahidley's contrary argument relies on *United States v. Menza*, 137 F.3d 533 (7th Cir. 1998). There, the Seventh Circuit vacated a restitution award and remanded for an evidentiary hearing because it concluded that the sentencing court had not developed an adequate record to permit appellate review. *Menza*, 137 F.3d at 538-40. In particular, the Seventh Circuit concluded that the sentencing court had given "an inadequate explanation and insufficient reasoning" regarding its acceptance "on their face" of invoices of the Drug Enforcement Administration and defendant's landlord and that it needed to determine "whether the losses incurred by the DEA and Meriter [the landlord] are specifically attributed to and directly related to" the criminal conduct that formed the basis for defendant's convictions. *Id.* at 538, 540.

*Menza* is readily distinguishable. The two invoices at issue in *Menza* raised more questions than they answered. It was undisputed that the reimbursement amount claimed in the DEA's invoice included costs for the disposal of "non-

criminal" items that were not related to defendant's offense. *Id.* at 536. In that circumstance, the failure of the invoice to itemize costs – thereby identifying clean-up costs related to the offense conduct – was a major deficiency. Further, the landlord's invoice raised a significant possibility of double-counting, in that it showed that the landlord was seeking reimbursement for environmental assessment and clean-up work that appeared to be similar to the kind of activities for which the DEA was separately seeking reimbursement. *Id.* at 539. Given the problematic nature of these invoices, it is hardly surprising that the Seventh Circuit questioned why the sentencing court would accept them on their face.

In contrast to *Menza*, the documentation at issue here – on its face – established with reasonable certainty the losses recoverable through a restitution order. In particular, it did not raise concerns about the inclusion of non-recoverable costs. This documentation related to one thing and one thing only – the costs incurred by NMHSD for care provided to Ms. Pollack for injuries she suffered on October 13, 2004 at Mr. Ahidley's hands. Given this singular focus, unlike the situation in *Menza*, the district court would not have been impeded in arriving at a proper restitution amount by the absence of a specific itemization of costs. Accordingly, Mr. Ahidley's reliance on *Menza* is misplaced. We conclude that the district court did not abuse its discretion in setting the restitution amount.

### B. Payment Schedule

The MVRA outlines the procedure for issuing and enforcing restitution orders and provides that the district court "shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). "The court is granted considerable discretion in structuring a payment schedule." *Overholt*, 307 F.3d at 1255. The statute provides:

> A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments.

18 U.S.C. § 3664(f)(3)(A). Furthermore, when the court finds from the evidence that the defendant's "economic circumstances" do not permit him (a) to pay currently any amount of a restitution order, and (b) to pay "the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments," it may enter an order "direct[ing] the defendant to make nominal periodic payments." *Id.* § 3664(f)(3)(B).

In determining a payment schedule, the statute expressly instructs the court to consider certain factors regarding an individual defendant, including the defendant's financial resources, his other assets (including whether jointly or individually controlled), his projected earnings and other income, and his financial obligations. *See id.* § 3664(f)(2)(A)-(C). Although extensive remarks are not necessary, we must be able to discern from the record that this

consideration has taken place. *See United States v. Coates*, 178 F.3d 681, 684 (3d Cir. 1999) (Alito, J.) (rejecting the government's argument that the district court may "satisfy its duties under section 3664 through its silence"). We "decline to enter the zone of appellate speculation" as to whether a district court has considered § 3664(f)(2) factors. *Kravchuk*, 335 F.3d at 1159 (internal quotation marks omitted; quoting *United States v. Zanghi*, 209 F.3d 1201, 1205 (10th Cir. 2000)).

In *United States v. Zunie*, 444 F.3d 1230 (10th Cir. 2006), we recently addressed the requirement that a district court set a restitution payment schedule "in light of the statutory factors." 444 F.3d at 1238. There, the defendant alleged that the district court erred by (1) imposing restitution "without regard" to his "indigence"; and (2) ordering to be due immediately the total amount of restitution. *Id.* We deemed it unnecessary to go beyond the first contention of error. We confirmed that under the MVRA a district court must consider a defendant's financial resources and the other § 3664(f)(2) factors in setting "an appropriate restitution payment schedule." *Id.* We remanded for such consideration.

In the language of § 3664(f)(2), the district court's restitution payment schedule in this case required Mr. Ahidley to pay a "single, lump-sum payment." The court's written judgment provided: "The restitution will be paid immediately." R. vol. I, Doc. 39 at 5. Nothing in the record, however, indicates

that the district court engaged in the requisite consideration of the statutory factors, including Mr. Ahidley's financial resources.  Indeed, at the sentencing hearing, the district court was completely silent about the *subject* of a restitution payment schedule.  Therefore, the court would not have had any occasion to engage in the mandated statutory analysis.

In failing to consider on the record the § 3664(f)(2) factors in imposing a restitution payment schedule on Mr. Ahidley, it is beyond peradventure that the district court erred.  *See Zunie*, 444 F.3d at 1238  ("remand[ing] for the district court to set an appropriate payment schedule in light of the statutory factors"). As the government correctly suggests, however, the real question is whether it committed plain error.  The government "concedes that if *Zunie* was decided under a plain error standard, this Court must remand this case and instruct the district court to set a payment schedule."  Aple. Br. at 13.  It contends, however, that *Zunie*'s text leaves the reader in doubt regarding the standard of review that the court used in concluding that the district court erred.  That lack of clarity, the government reasons, allows for the possibility that *Zunie* was decided under a less demanding standard of review than plain error, such that its holding of error should not dictate the result here.

It is true the text of *Zunie* is not clear regarding its guiding standard of review.  For the reasons noted below, however, we do not believe that clearing the murky waters on this point has any controlling effect on the outcome of this

case. Nonetheless, reliable information concerning the standard of review at work in *Zunie* could be directly relevant to our assessment of the weight to give to its holding. Consequently, we have reviewed certain publicly-filed records in *Zunie*.[5] They strongly suggest that *Zunie* was not decided under a plain-error standard of review. Regarding the restitution challenge, in *Zunie* the government did not argue for application of the plain-error standard, and the defendant was silent about it. *See* Aple. Br. at 27; Aplt. Op. Br. at 23, 25; Aplt. Reply Br. at 6-8. The defendant did express concerns about the restitution award at the sentencing hearing. *See* Tr. Sentencing Hearing at 23-24 (D. N.M., Case No. 03-1453, August 31, 2004). The parties apparently deemed defendant's sentencing arguments to be sufficient to preserve the issue of the restitution payment schedule for appellate review.

Therefore, *Zunie* is probably not on all fours with this case; unquestionably,

---

[5] Although we are not obliged to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand. *See St. Louis Baptist Temple v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *see also Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) ("We note, however, that the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2000). Here, we have elected to examine publicly-filed records in the Zunie litigation, including the appellate briefs, the criminal judgment, and the transcript of the sentencing proceeding.

plain-error review is appropriate here. However, this fact is of little moment. We have no difficulty concluding that a district court's failure to follow the unambiguous mandate of § 3664(f)(2) to consider a defendant's financial resources and related factors is error that is clear and obvious, and, under the particular circumstances of this case, it is an error that should be recognized. *See Coates,* 178 F.3d at 681; *cf. United States v. Thingpen*, 456 F.3d 766, 771 (7th Cir. 2006) (holding that district court plainly erred when it effectively failed to set a statutorily-required restitution payment schedule by "rul[ing] that the entire amount of the restitution was due and payable in sixty days after sentencing").[6]

The MVRA was on the books for almost ten years at the time of Mr. Ahidley's sentencing hearing and § 3664(f)(2)'s command is unambiguous. A district court must set the restitution payment schedule "in consideration of" certain characteristics of a defendant, including the defendant's financial resources. The failure to do so is obvious error. Only a few years after the

_____

[6]    In an unpublished opinion of our court, on similar facts, we applied the plain error standard and determined that the district court plainly erred in ordering the defendant, jointly and severally with his co-defendants, to pay $76,594.73 in restitution immediately, without giving consideration to defendant's financial condition. *See United States v. Garcia-Castillo*, 127 Fed. App'x. 385, 386, 393 (10th Cir. 2005). There, according to the PSR, defendant "had no income or assets and only a grade-school education." *Id.* We "vacat[ed] the portion of the restitution order that directs immediate full payment and remand[ed] to the district court to consider an appropriate manner of payment." *Id.* at 394. Although *Garcia-Castillo* is not binding precedent, its analysis is persuasive on these facts.

passage of the MVRA, the Third Circuit recognized this in *Coates*. It succinctly stated: "Since the MVRA mandates that district courts schedule restitution payments after taking into account the defendant's financial resources, the District Court's failure to do so here constitutes plain error." 178 F.3d at 684.

Despite the presence of contrary authority in other circuits,[7] we reached a similar result in *Overholt*, focusing on the unambiguous language of the statute and its structure. We stated: "In light of this statutory scheme, we see no room for delegation by the district court with respect to payment schedules for restitution." 307 F.3d at 1256. Accordingly, under a plain-error standard, we reversed the district court's restitution order that was "essentially delegating the preparation of a payment schedule to the Bureau of Prison and the probation office" and remanded "for the sole purpose of establishing a schedule." *Id.* 1255, 1256. Accordingly, the district court's failure here to consider on the record the § 3664(f)(2) factors is error of an obvious nature.

Further, it is an error that affects Mr. Ahidley's substantial rights and seriously impacts the fairness and integrity of judicial proceedings. Most

---

[7] In at least one circuit, a district court need not consider on the record the § 3664(f)(2) factors in establishing a restitution payment schedule. In *United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004), the Second Circuit rejected the notion that the district court "committed error, plain or otherwise, by failing to consider 18 U.S.C. § 3664(f)(2)'s mandatory factors in setting his restitution amount." 364 F.3d at 421. As in *Overholt*, however, we do not believe the presence of contrary circuit authority should control our determination of whether the district court's error was plain.

importantly, under an appropriate and reasonable consideration of the §

3664(f)(2) factors, it seems virtually certain that the district court would not have

settled on the option of imposing an immediate-payment obligation on Mr.

Ahidley.

The PSR indicated that Mr. Ahidley, a highschool dropout with no

specialized skills, had no financial assets and was being supported by his family

when he was arrested.  It further concluded that Mr. Ahidley did not have the

financial wherewithal to pay a fine.  Indeed, the district court appeared to

acknowledge Mr. Ahidley's impecunious state by waiving imposition of the fine.

On these facts, it would appear almost beyond question that Mr. Ahidley could

not make an immediate, single lump-sum payment of over $22,500.  *See United*

*States v. Myers*, 198 F.3d 160, 168-69 (5th Cir. 1999) (holding as to $40,000

restitution award that the district "plainly erred in requiring immediate payment

of the  restitution" when defendant had a negative net worth and no income); *see*

*also supra* note 6 (discussing our unpublished decision in *Garcia-Castillo*,

reversing under a plain error standard an immediate-payment restitution order in

the amount of $76,594.73, where defendant had no income and "only a grade-

school education").

Having concluded that the district court plainly erred, we vacate the

schedule-of-payments portion of Mr. Ahidley's sentence and remand for the

district court to determine an appropriate payment schedule with reference to the

§ 3664(f)(2) factors.

### III.  <u>CONCLUSION</u>

The district court's order regarding the restitution amount is **AFFIRMED**. However, we **VACATE** that portion of its restitution order establishing the schedule of payments and **REMAND** for the district court to impose an appropriate payment schedule consistent with this opinion.