FILED
United States Court of Appeals
Tenth Circuit

May 19, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

In re: JONATHAN ISAAC
SCHUPBACH; AMY MARIE
SCHUPBACH,

Debtors.

------------------------------

BANK OF COMMERCE & TRUST
COMPANY,

Plaintiff - Appellant,

v.

JONATHAN ISAAC SCHUPBACH;
AMY MARIE SCHUPBACH,

Defendants - Appellees.

No. 14-3166
(BAP No. 13-068-KS)
(BAP)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **McKAY** and **PHILLIPS**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Bank of Commerce & Trust Company (Bank) appeals a decision by the Bankruptcy Appellate Panel (BAP) dismissing the Bank's appeal for lack of jurisdiction because the Bank's nondischargeability claim against Jonathan Isaac Schupbach and Amy Marie Schupbach (Debtors) is moot. Exercising jurisdiction under 28 U.S.C. § 158(d)(1), we affirm.

## I. Background

Debtors were engaged in the business of buying, renovating, and renting or reselling homes in Wichita, Kansas. Doing business through Schupbach Investments LLC (LLC), they obtained financing from the Bank to renovate over 40 properties. The loans were secured by mortgages on the individual properties, and Debtors also personally guaranteed the loans.

In May 2011, the LLC filed for relief under Chapter 11 of the Bankruptcy Code (LLC Case). The Bank filed a proof of claim in the LLC Case in the amount of $748,748.72, further stating that the value of the collateral securing the debt was in excess of $1.3 million, based on appraisals. *See* Aplt. App., Vol. 2 at 111. In July 2011, Debtors filed for relief under Chapter 13 of the Bankruptcy Code (Individual Case), listing the Bank as an unsecured creditor based on Debtors' personal guarantees of the Bank's loans to the LLC. The Bank filed a proof of claim in the Individual Case identical to its proof of claim in the LLC Case. *See id.* at 13. The bankruptcy court subsequently granted Debtors' motion to convert the Individual Case to proceed under Chapter 11 rather than Chapter 13.

The Bank filed an adversary proceeding in the Individual Case on March 6, 2012, alleging that a portion of the debt owed to it by Debtors was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6) (Nondischargeability Case). The Bank claimed that Debtors obtained some of the financing based on false pretenses and also willfully and maliciously misappropriated or converted the loan proceeds for their own use. The Bank's claims in the Nondischargeability Case involved six of the more-than-40 loans to the LLC, and it sought to exclude only $172,000 from discharge. In June 2012, the bankruptcy court dismissed the Bank's § 523(a)(2) claim as untimely. *Bank of Commerce & Trust Co. v. Schupbach (In re Schupbach)*, 473 B.R. 423, 428-29 (Bankr. D. Kan. 2012). In the same order, it denied Debtors' motion to dismiss the § 526(a)(6) claim for failure to state a claim, and it construed a third count in the Bank's complaint "as seeking a determination of the amount which is nondischargeable, not the entire claim." *Id.* at 429.

In July 2012, the Bank and other creditors filed a proposed plan of liquidation in the LLC Case (LLC Plan). The bankruptcy court confirmed the LLC Plan in November 2012. It provided for the Bank's allowed secured claim, and it effected a transfer to the Bank, free and clear of all rights of Debtors, of all real property in which the Bank held a first mortgage. *See* Aplt. App., Vol. 3 at 6-7. The real property transferred to the Bank under the LLC Plan included the properties serving as collateral on the six loans at issue in the Bank's adversary proceeding.

- 3 -

In September 2013, after a bench trial in the Nondischargeability Case, the bankruptcy court denied on the merits the Bank's claim for denial of discharge under § 523(a)(6) and entered judgment in favor of Debtors. *Bank of Commerce & Trust Co. v. Schupbach (In re Schupbach)*, 500 B.R. 22, 36-37 (Bankr. D. Kan. 2013). The Bank appealed only the bankruptcy court's earlier dismissal of its § 523(a)(2) claim as untimely.

In March 2014, while the Bank's appeal in the Nondischargeability Case was pending at the BAP, Debtors filed a proposed Chapter 11 plan (Individual Plan). The Individual Plan treated the Bank's claim as follows:

> 4. Class 4: All Other Allowed Unsecured Claims.
> . . . .
>
> Certain holders of unsecured claims also held secured claims against [the LLC] that were personally guaranteed or co-signed by the Debtors. The holders of such claims will be treated as unsecured herein. However, the full amount of their claims were secured by various real property more particularly described in the [LLC] Plan. The collateral for these Claims was previously owned by [the LLC] and was transferred to these particular creditors through the [LLC] Plan. Debtor incorporates the terms of such surrender and transfer into this Plan. As a result, the holders of these claims will have their qualifying Class 4 claims limited herein in the following manner. First, the claims are determined by looking to the filed amount of the claim . . . . Second, the value of the collateral received by the holders of these claims through the [LLC] Plan will be deducted from the claim. The value of the collateral will be determined by the publicly accessible county appraisal values. The resulting amount will be the allowed amount of the claim for voting and distribution purposes. These amounts and calculations are reflected on **Exhibit E** and incorporated herein by reference. If the holder of any particular claim disagrees with the allowed amount of the claim as reflected on **Exhibit E**, such holder may choose a different value for the collateral by filing an amended proof of claim not later than seven days prior to the deadline for casting a vote

- 4 -

on this Plan. The proof of claim **MUST** a) specifically identify the value of each **and every** item of collateral received through the [LLC] Plan and b) provide adequate proof of such value attached to the amended proof of claim in one of three acceptable forms[.]
. . . .

Should an amended proof of claim not be filed, . . . the amount of the claim will be as reflected on Exhibit E. The holders of the affected claims are as follows:
. . . .

Bank of Commerce & Trust . . .
. . . .

. . . . [T]he value of the collateral for the Class 4 Claim of [the Bank] far exceeds the claim asserted by [the Bank]. As such, the treatment in the [LLC] Plan shall be provided to [the Bank] in full satisfaction of the Class 4 Claim. . . . . [The Bank] may nonetheless file [an] amended claim[] pursuant to the procedures described above if [it] believe[s it] hold[s] deficiencies, and thus participate in Class 4.

Aplt. App., Vol. 3 at 68-69.

Exhibit E lists the amount of the Bank's claim as $748,748.72 and the value of the collateral as $956,940.00. *Id.* at 83. Exhibit B to the Individual Plan provides that the treatment of the Bank's claim is to "[a]llow and surrender collateral in full satisfaction." *Id.* at 79. The Individual Plan provided further that "[c]onfirmation of this Plan shall act as final allowance of all claims listed on Exhibits B and E as 'allowed.' Allowed Claims shall be treated in accordance with this Plan." *Id.* at 72. The Individual Plan also expressly provided that "[t]he rights and obligations of any entity named or referred to in this Plan will be binding upon . . . such entity." *Id.* at 76. Regarding the Dischargeability Case, the plan stated that "[t]he pending appeal

with [the Bank] and related adversary proceeding may remain open following entry of the final decree." *Id.* at 73.

The Bank received notice of the Individual Plan. It did not file an objection or an amended proof of claim. The bankruptcy court confirmed the Individual Plan on April 20, 2014 (Confirmation Order). No party appealed the Confirmation Order.

In May 2014, after the Individual Plan had been confirmed, Debtors moved the BAP to dismiss the Bank's appeal in the Nondischargeability Case. They contended that the Bank's nondischargeability claim was moot because the Bank's claim in the Individual Case had been satisfied in full pursuant to the Confirmation Order.

The Bank opposed the motion, arguing that the Individual Plan only established the allowed amount of its claim "for voting and distribution purposes"; the discharge provision under the plan did not apply to debts falling under § 523; and the plan stated that the Nondischargeability Case may remain open following entry of a final decree. The Bank further contended that substantive disputes that must be adjudicated in an adversary proceeding—specifically the extent of the Bank's injuries resulting from Debtors' fraudulent representations regarding loans on six properties—are not subject to the preclusive effect of a confirmed plan. The BAP granted Debtors' motion and dismissed the Bank's appeal for lack of jurisdiction.

## II.  Discussion

### A.  *Standard of Review*

We review de novo the BAP's determination that a pending appeal is constitutionally moot.  *See Search Market Direct, Inc. v. Jubber (In re Paige)*, 584 F.3d 1327, 1334 (10th Cir. 2009) (applying de novo review to district court ruling that appeal before it was moot).  We also review de novo the terms of the Individual Plan as a question of law.  *See id.*

### B.  *Constitutional Mootness*

"Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies."  *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) (internal quotation marks omitted). "A case may . . . become moot if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party."  *Id.* at 1212-13 (internal quotation marks omitted).  "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world."  *Id.* (internal quotation marks and ellipsis omitted). "The mootness question necessarily constitutes our threshold inquiry, because the existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of the federal courts."  *Dais-Naid, Inc. v. Phoenix Res. Cos. (In re Tex. Int'l Corp.)*, 974 F.2d 1246, 1247 (10th Cir. 1992) (internal quotation marks

omitted).  We agree with the BAP that the Bank's nondischargeability claim was mooted by the confirmed Individual Plan.

> **C.      The Bank's Nondischargeability Claim was Mooted by the Confirmation Order, Which Provides that the Bank's Claim in the Individual Case Has Been Fully Satisfied**

"[A] confirmed plan functions as a judgment with regard to those bound by the plan . . . ."  *Paul v. Monts*, 906 F.2d 1468, 1471 n.3 (10th Cir. 1990).  Chapter 11 provides that "the provisions of a confirmed plan bind the debtor, . . . and any creditor . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan."  11 U.S.C. § 1141(a).  "When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike.  Confirmation has preclusive effect, foreclosing relitigation of any issue actually litigated by the parties and any issue necessarily determined by the confirmation order."  *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 2015 WL 1959040, at *5 (2015) (citation and internal quotation marks omitted) (construing comparable statutory language regarding effect of confirmation under Chapter 13).  "[H]ow the confirmed plan treats a particular claim or interest is of vital importance.  An affected creditor . . . will have only such rights postconfirmation as the drafted plan may give it."  Collier on Bankruptcy ¶ 1129.01[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2015); *see also United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1209 (10th Cir. 1997) (noting "because creditors are limited to those rights that they are afforded by the plan, they may not take actions to collect debts

that are inconsistent with the method of payment provided for in the plan" (internal quotation marks omitted)). Here, the terms of the Individual Plan itself also stated that the rights and obligations of any entity named or referred to in the plan will be binding on such entity.

In the Nondischargeability Case, the Bank sought a ruling that a *portion* of its claim filed in the Individual Case was nondischargeable. But according to the confirmed Individual Plan, the Bank's claim in the Individual Case was fully satisfied by the previous transfer of real property to the Bank under the terms of the confirmed LLC Plan. Thus, once the Individual Plan was confirmed and the Confirmation Order was unchallenged on appeal, there was no remaining case or controversy regarding the Bank's nondischargeability claim.

To be sure, the Individual Plan specifically provided that the Nondischargeability Case "may remain open following entry of the final decree." Aplt. App., Vol. 3 at 73. But that provision did not prevent the Bank's nondischargeability claim from becoming moot under the other terms of the plan. *Even if* the Bank were to prevail in its appeal by obtaining a reversal of the bankruptcy court's dismissal of its § 523(a)(2) claim as untimely, and *even if* the bankruptcy court held on remand that a portion of the Bank's claim is nondischargeable, it remains impossible for that court to grant the Bank any effectual relief because the Bank's claim against Debtors—*including* the portion it sought to exclude from discharge—has been satisfied in full. *See Navani v. Shahani*, 496 F.3d

- 9 -

1121, 1131 (10th Cir. 2007) (holding that, although an issue raised on appeal was still before the court, an interim trial court order precluded this court from granting the appellant any effectual relief even if the issue were decided in her favor). After entry of the Confirmation Order, a court's decision that a portion of the Bank's claim is nondischargeable would have no "legal effect in determining the present and future rights and obligations of the parties." *Prier*, 456 F.3d at 1213. Therefore, the Bank's nondischargeability claim is moot.

> **D.** **The Bank's Contentions Regarding Mootness Were Not Preserved for Appellate Review or Lack Merit**

The Bank advances several arguments why its nondischargeability claim was not mooted by the Confirmation Order: (1) the bankruptcy court lacked jurisdiction to make a finding in the Individual Case that could moot the Bank's nondischargeability claim; (2) the bankruptcy court's finding regarding the value of the Bank's collateral is not binding on the Bank in the Nondischargeability Case because that issue was not actually litigated in the Individual Case, as required for issue preclusion; (3) the BAP exceeded its authority by making factual findings in support of its mootness determination; and (4) the scope of the Individual Plan was limited to "voting and distribution purposes" and does not apply to the Bank's nondischargeability claim. Underlying the Bank's contentions is its claim that it

chose to forgo litigating the value of its collateral in the confirmation proceedings for the Individual Plan in favor of litigating that issue in the Nondischargeability Case.[1]

1.      The Bankruptcy Court's Jurisdiction to Enter the Confirmation Order

The Bank argues the BAP erred in dismissing its appeal as moot based on the Confirmation Order because the bankruptcy court lacked jurisdiction to enter the Confirmation Order while the Bank's appeal in the Dischargeability Case was pending. The Bank asserts that its appeal divested the bankruptcy court of jurisdiction over aspects of the bankruptcy case that were involved in the appeal. It contends that, because an underlying unsecured claim is a necessary element of a nondischargeability claim, the bankruptcy court had no jurisdiction to enter an order treating the Bank's claim as fully satisfied.

Debtors argue this court should decline to reach this issue because the Bank raised it for the first time in this appeal, thereby forfeiting appellate review. In response, the Bank asserts that a jurisdictional defect may be challenged at any time. Thus, the Bank invokes "the familiar principle that so long as a case is pending, the issue of federal court jurisdiction may be raised at any stage of the proceedings either by the parties or by the court on its own motion." *Lang v. Lang (In re Lang)*, 414 F.3d 1191, 1194 (10th Cir. 2005) (brackets and internal quotation marks

---

[1]      In its reply brief, the Bank asserts it has evidence that, after liquidation of all of its collateral, it has a deficiency claim exceeding $350,000. *See* Aplt. Reply Br. at 7 n.2.

omitted).  The Bank is correct on that issue, as far as it goes.  If this were a direct review of the bankruptcy court's Confirmation Order, we would be duty bound to consider whether that court acted beyond its jurisdiction.  *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 148 (2009).  But the Confirmation Order was entered on April 14, 2014, and was immediately appealable.  *See Bullard*, 135 S. Ct. 1686, 2015 WL 1959040, at \*4-\*5.  The time to appeal, however, has expired.  *See* Fed. R. Bankr. P. 8002(a).

> [O]nce the [Confirmation Order] became final on direct review (whether or not [a] proper exercise[] of bankruptcy court jurisdiction and power), [it] became res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*Travelers Indemnity*, 557 U.S. at 152 (internal quotation marks omitted).[2]  The Bank could have challenged the bankruptcy court's jurisdiction to enter the Confirmation Order on direct review of that order; it did not do so, and it may not now "reopen that question in a collateral attack upon an adverse judgment."  *Id.* at 153 (internal quotation mark omitted).

2.      Application of Issue Preclusion

The Bank argues that the bankruptcy court's finding regarding the value of its collateral is not binding on the Bank in the Nondischargeability Case because that

---

[2]      This is not one of the rare situations identified in *Travelers Indemnity* in which subject-matter jurisdiction may be subject to collateral attack.  *See* 557 U.S. at 153 n.6.

issue was not actually litigated in the Individual Case. Therefore, the Bank contends, the BAP erred in dismissing the appeal as moot based on the Confirmation Order because the doctrine of issue preclusion applies only when an issue underlying a judgment was actually litigated. *See Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009) ("Under federal law, issue preclusion attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." (internal quotation marks omitted)).

The Bank does not indicate in its opening brief where it raised this issue in the BAP, as required by 10th Cir. R. 28.2(C)(2). "An issue is preserved for appeal if a party alerts the [lower] court to the issue and seeks a ruling." *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1150 (10th Cir. 2012) (internal quotation marks omitted). The Bank does acknowledge that the BAP made no ruling on the application of issue preclusion. Our review of the record indicates that the Bank did not raise this contention in response to Debtors' motion to dismiss the appeal as moot. We generally do not review issues that a party raises for the first time on appeal, even new issues that are related to those raised in the lower court. *See Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005). This rule applies as well in bankruptcy proceedings. *See Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1264 n.5 (10th Cir. 1999) (holding issue not raised in appeal to district court from bankruptcy court was forfeited in appeal to this court). Because the Bank does not

attempt to show plain error, we hold that it has waived our review of this issue. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-31 (10th Cir. 2011) (holding argument forfeited in lower court is entitled to appellate review as a basis for reversal only if appellant satisfies plain error standard of review; failure to argue plain error waives the argument in this court).

### 3. Impermissible Findings of Fact By the BAP

The Bank contends that the BAP, as an appellate tribunal, impermissibly made factual findings in support of its dismissal of the appeal, specifically with respect to the value of the Bank's collateral. We disagree. First, the Bank cites no authority for its proposition that an appellate court may not make factual determinations in deciding that an appeal is moot. Under the circumstances in this case, the BAP was tasked with deciding whether a subsequent event—the entry of the Confirmation Order—made it impossible to grant effectual relief even if it should decide the appeal in the Bank's favor. It has long been the rule that facts relevant to a mootness determination, "when not appearing on the record, may be proved by extrinsic evidence." *Heitmuller v. Stokes*, 256 U.S. 359, 362 (1921) (making factual findings in support of determination that appeal was mooted by subsequent events, *id.* at 361-62). "Neither is it open to question that [an appellate court] may take judicial notice of materials on appeal, or that doing so can wind up rendering a case moot . . . during its pendency on appeal." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012). Here, the BAP could take judicial notice of the

Confirmation Order on the bankruptcy court's docket. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007). Ultimately, upon notice of the Confirmation Order, the BAP's analysis involved a legal assessment of the terms of that order and the mootness implications arising from it. *See Jordan v. Sosa*, 654 F.3d 1012, 1033 n.19 (10th Cir. 2011). The BAP did not make impermissible factual findings in support of that determination.

### 4. The Scope of the Individual Plan

The Bank's final contention is that the scope of the confirmed Individual Plan is limited to the purposes of "voting and distribution." The Bank points to the following language in the Individual Plan, addressing allowance of the Bank's claim:

> First, the claims are determined by looking to the filed amount of the claim . . . . Second, the value of the collateral received by the holders of these claims through the [LLC] Plan will be deducted from the claim. The value of the collateral will be determined by the publicly accessible county appraisal values. *The resulting amount will be the allowed amount of the claim for voting and distribution purposes.*

Aplt. App., Vol. 3 at 68 (emphasis added). Based on the plan's reference to "the allowed amount of the claim for voting and distribution purposes," the Bank asserts that it did not object to the Individual Plan or file an amended proof of claim because it had chosen to "forgo[] highly improbable future unsecured creditor distributions in the case," Aplt. Opening Br. at 11. The Bank maintains that it elected instead to pursue only its Nondischargeability Case. It contends that, while the Confirmation Order precludes it from participating in potential future distributions to unsecured

- 15 -

creditors under the Individual Plan, the order by its terms has no effect on its nondischargeability claim.

We are not persuaded. The Bank filed a proof of claim in the Individual Case that *included* the amount the Bank alleged was nondischargeable in the Nondischargeability Case. Debtors' proposed Individual Plan calculated the amount of the Bank's allowed claim based on a stated value of the collateral subtracted from the amount of the filed claim. *See* Aplt. App., Vol. 3 at 68. Because the value of the collateral far exceeded the amount of the Bank's claim, the plan treated it as fully satisfied by the previous transfer of property from Debtors to the Bank pursuant to the confirmed LLC Plan.

The stated collateral value in the Individual Plan was subject to the Bank's election to file an amended proof of claim substantiating a different (presumably lower) value, thereby demonstrating that the Bank's claim was not fully satisfied. But the Bank did not file an amended proof of claim. As a result, the Bank's claim—in its entirety, including the portion alleged to be nondischargeable—was treated as fully satisfied under the confirmed Individual Plan.

The Bank nonetheless contends that the Confirmation Order does not establish its claim was fully satisfied for purposes of the Nondischargeability Case because the Individual Plan determined the allowed amount of its claim *only* "for voting and distribution purposes." Debtors dispute this reading of the Individual Plan, which they proposed. As they point out, the Bank's argument inserts the word "only"

- 16 -

before "for voting and distribution purposes" where that limiter does not appear in the Individual Plan. And the Bank does not call attention to any provision of the Individual Plan that limits its treatment of the Bank's claim as being fully satisfied.

But even if we were to narrowly construe the effect of the Individual Plan as limited in the manner the Bank argues, its contention begs the question in what forum the value of its collateral would be *re*determined? The Bank responds that this issue was raised in and would be litigated in the Nondischargeability Case on remand from the BAP. But the Bank fails to support this assertion with any citation to the record. *See* Aplt. Opening Br. at 11 (stating without citation to the appendix that "[t]he Debtors have raised the issue [whether the Bank has a deficiency claim] in the [Nondischargeability] Case" and "that issue will be adjudicated as a part of the trial by the Bankruptcy Court"); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring appellant to support its contentions with citations to the record).

Our review of the record indicates that the third count of the Bank's complaint in the Nondischargeability Case asked the bankruptcy court to determine the amount of the nondischargeable debt. *See* Aplt. App., Vol. 1 at 128. The bankruptcy court construed that count "as seeking a determination of the amount which is nondischargeable, not the entire claim," stating that "[t]his matter is properly determined in the adversary proceeding challenging dischargeability." *In re Schupbach*, 473 B.R. at 429. The final pretrial order on the Bank's § 523(a)(6) nondischargeability claim did not include the value of the Bank's collateral as an

issue of fact to be tried. And consistent with its previous construction of the complaint, in denying that claim the bankruptcy court concluded after "[f]inding no basis for denial of discharge," that "the count of the Complaint *for determining the amount excepted from discharge* is moot." *In re Schupbach*, 500 B.R. at 36 (emphasis added). The Bank did not argue in its appeal to the BAP that the bankruptcy court misconstrued its complaint as seeking only a determination of the amount of the debt that was nondischargeable.

We reiterate that the Bank filed a claim in the Individual Case and then declined to establish a collateral valuation different from the value proposed by Debtors in the Individual Plan. That plan treated the Bank's claim—*including* the portion it alleged as nondischargeable—as fully satisfied. The Individual Plan was confirmed without objection or appeal by the Bank. We reject the Bank's contention that we should narrowly construe the effect of the Confirmation Order as limited to the issue whether the Bank could vote on or receive any distribution in the Individual Case, such that the value of its collateral would be a live case or controversy on remand in the Nondischargeability Case.

## III.   Conclusion

The judgment of the Bankruptcy Appellate Panel, dismissing the Bank's appeal for lack of jurisdiction as moot, is affirmed.

Entered for the Court

Monroe G. McKay
Circuit Judge

- 18 -