**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 21, 2005**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

HENRY DARIAN WILSON,

     Defendant-Appellant.

No. 03-5207

(D.C. No. 03-CR-73-EA)
(N.D. Oklahoma)

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 03-CR-73-EA)**

---

Art Fleak, Tulsa, Oklahoma, for the Defendant-Appellant.

Charles M. McLoughlin, Assistant United States Attorney, and David E. O'Meilia, United States Attorney, Tulsa, Oklahoma, for the Plaintiff-Appellee.

---

Before **BRISCOE**, **McKAY**, and **HARTZ**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

     Defendant Henry Wilson entered a plea of guilty to a two-count information

charging him with mail fraud, in violation of 18 U.S.C. § 1341, and income tax evasion,

in violation of 26 U.S.C. § 7201. He was sentenced to two concurrent 37-month terms of

imprisonment and ordered to pay $1,148,546.34 in restitution. On appeal, Wilson argues the district court erred in calculating his criminal history category for purposes of the Sentencing Guidelines. Further, he argues the court misapprehended the scope of its discretion to determine the manner in which restitution would be paid. Finally, he contends he is entitled to resentencing in light of the Supreme Court's decisions in Blakely v. Washington, 524 U.S. 296, 124 S.Ct. 2531 (1994), and United States v. Booker, 125 S.Ct. 738 (2005). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

### *Calculation of Criminal History Category*

We review the district court's legal interpretation of the Sentencing Guidelines de novo. United States v. Gardiner, 931 F.2d 33, 34 (10th Cir. 1991). Factual findings are reviewed for clear error. Id. A defendant's criminal history category (I-VI) is a function of the total criminal history points attributable to him under U.S.S.G. § 4A1.1, which provides in part:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.
> (d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

In this case, the first count of the information charged that, from January 2001

2

through March 2002, Wilson devised and participated in a scheme to defraud MCI WorldCom. It is undisputed that, on December 6, 2001, Wilson was convicted of transporting a loaded firearm in a motor vehicle and given a one-year deferred sentence. Based on that sentence, the district court attributed one criminal history point pursuant to § 4A1.1(c). Additionally, the district court attributed two points pursuant to § 4A1.1(d) because the instant offense was committed while under the deferred sentence. The total of three criminal history points put Wilson in criminal history category II, which, in combination with an offense level of 20, resulted in a sentencing range of 37 to 46 months. As stated, Wilson was sentenced at the bottom of that range.

On appeal, Wilson argues his firearm offense could have been considered as "relevant conduct" and, therefore, his sentence on that conviction should not have been considered in calculating his criminal history pursuant to § 4A1.1(c) and (d).[1] "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt . . . *for conduct not part of the instant offense.*" U.S.S.G. § 4A1.2(a)(1) (emphasis added).

> A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense.

---

[1] Under the Guidelines, firearm use or possession is relevant conduct for purposes of calculating a defendant's base offense level when the applicable Guideline section provides that the offense level shall be increased due to firearm use or possession. Wilson was sentenced pursuant to Guideline § 2B1.1, which is the proper section for offenses involving fraud and deceit. Section 2B1.1(b)(11)(B) provides that the defendant's offense level is to be increased two levels when the "offense involved . . . possession of a dangerous weapon (including a firearm) in connection with the offense."

3

> *Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of section 1B1.3.*

U.S.S.G. § 4A1.2, cmt. n.1 (emphasis added).  "[A] conviction will not be treated as a prior sentence (and no criminal history points can be added) so long as the underlying conduct meets the definition of relevant conduct."  United States v. Keifer, 198 F.3d 798, 801 (10th Cir. 1999).

When a district court takes a "prior sentence into account in calculating the offense level, then it is clear that to prevent double counting the court cannot use that same sentence in its criminal history calculation."  United States v. Torres, 182 F.3d 1156, 1160 (10th Cir. 1999).  When, as in this case, "the record shows that the court did not take the prior sentence into account for its base offense level calculation but instead used it for criminal history purposes . . . [w]e also must review the court's underlying finding that the prior sentence was not part of the instant offense, i.e., that it was not relevant conduct."  Id.  "To determine whether a prior offense is conduct related to the instant offense, courts generally examine several factors, including the similarity, temporal proximity, and regularity of the instant offense and the prior sentence."  Id.; see also United States v. Taylor, 97 F.3d 1360, 1365 (10th Cir. 1996) (stating two offenses are part of same course of conduct where there is "sufficient similarity and temporal proximity [between the acts] to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct").

In arguing the firearm offense is "relevant conduct," Wilson relies solely on the

fact that the prior sentence was imposed while his scheme to defraud was ongoing. The government, on the other hand, argues the two offenses were not part of a pattern of criminal conduct. The question raised by the parties—whether Wilson's prior offense was related to the instant offense—is a question of fact, and the government bears the burden of proving the prior offense is not relevant conduct. See Torres, 182 F.3d at 1161-64. In this case, the government offered no proof at sentencing that the prior offense was unrelated to the charged scheme to defraud, and the district court made no factual finding on the point. The record only reveals that the firearm offense was committed while the scheme to defraud was ongoing, but that fact by itself is not determinative. In addressing Wilson's argument, the district court merely stated that "the sentencing guidelines clearly want this Court to consider that conviction [as criminal history] because the sentencing occurred prior to today." Sent. Tr. at 3. In sum, the record is not sufficiently developed to allow a determination of whether Wilson's prior firearm offense is relevant conduct.

We conclude, however, that a remand for further findings on this issue is not necessary because any error by the district court was harmless. As noted, Wilson was sentenced pursuant to U.S.S.G. § 2B1.1. Section 2B1.1(b)(11)(B) provides that the defendant's offense level is to be increased two points when the "offense involved . . . possession of a dangerous weapon (including a firearm) in connection with the offense." Thus, had the district court considered Wilson's prior firearm offense as relevant conduct pursuant to § 2B1.1(b)(11)(B) as Wilson suggests, his total offense level would have been

22 instead of 20, and his criminal history category would have been I instead of II. As a result, his sentencing range would have been 41 to 51 months, instead of 37 to 46 months. As stated, the district court imposed a 37-month sentence. Therefore, even if Wilson were to prevail on his relevant conduct argument, he would not receive a more favorable sentence on remand.

Wilson assumes that, on remand, his offense level would be fixed at 20. In other words, although Wilson contends his prior offense is relevant conduct, he believes that, on remand, the district court would be precluded from counting it as such. The general rule, however, is that resentencing on remand is de novo. See Keifer, 198 F.3d at 801 (stating "[r]esentencing on remand is typically de novo"); see also United States v. Moore, 83 F.3d 1231, 1234 (10th Cir. 1996) (stating "the court on remand has the discretion to entertain evidence that could have been presented at the original sentencing even on issues that were not the specific subject of the remand").

Wilson makes a second, independent argument regarding the district court's application of § 4A1.1(d). He argues the district court erred by adding two points pursuant to § 4A1.1(d) because the scheme to defraud commenced nine months prior to his being sentenced for the firearm offense. Under § 4A1.1(d) "[t]wo points are added if the defendant committed *any part of the instant offense* (i.e., any relevant conduct) while under any criminal justice sentence, including probation, parole, supervised release, [or] imprisonment." U.S.S.G. § 4A1.1, cmt. n.4 (emphasis added). It is undisputed that

6

Wilson continued to participate in the scheme to defraud after receiving the one-year deferred sentence for the firearm offense. Further, we have held that a deferred sentence imposed under Oklahoma law is a criminal justice sentence for purposes of § 4A1.1(d). United States v. Vela, 992 F.2d 1116, 1117 (10th Cir. 1993) (applying Oklahoma law, which requires defendant be placed on probation during period of deferment).

### Order of Restitution

The Mandatory Victim Restitution Act of 1996 (MVRA) requires the payment of restitution in any case involving an "offense against property under [Title 18]," including "any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). The procedures for issuing and enforcing a restitution order are set forth in 18 U.S.C. § 3664. "[T]he court shall order restitution to each victim in the full amount of each victim's losses as determined by the court without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The defendant's economic circumstances are relevant in fixing a payment schedule. "Upon determination of the amount of restitution," the district court shall specify the "manner" in which restitution will be paid, "in consideration of— (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C. 3664(f)(2). The district court may "direct the defendant to make a single, lump-sum payment, partial payments at specified intervals,

7

in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A).

"We review de novo a district court's interpretation of the MVRA." United States v. Barton, 366 F.3d 1160, 1164-65 (10th Cir. 2004). "Factual findings underlying a restitution order are reviewed for clear error and the amount of restitution for an abuse of discretion." United States v. Quarrell, 310 F.3d 664, 676 (10th Cir. 2002). District courts have "substantial discretion" in determining how restitution is to be paid. See United States v. Tarbox, 361 F.3d 664, 665 (1st Cir. 2004); United States v. McGlothlin, 249 F.3d 783, 784 (8th Cir. 2001); see also United States v. Corbett, 357 F.3d 194, 195 (2d Cir. 2004) ("Once having considered the mandatory factors specified by § 3664(f)(2), the sentencing judge is afforded very broad discretion in setting the schedule."). While the government has the burden of "demonstrating the amount of loss sustained by a victim," the defendant has the burden of demonstrating his "financial resources" and the "financial needs of [his] dependents." 18 U.S.C. § 3664(e).

Wilson does not challenge the total amount of restitution but rather the *manner* it is to be paid. The district court ordered Wilson to pay "the greater of $25 quarterly or 50 percent of income" while in prison and $100 per month upon release from prison. ROA, Vol. IV, at 18. Wilson requested that his obligation to make payments be deferred until his release from prison. Alternatively, Wilson requested that, during his incarceration, restitution payments be taken from his prison wages only and not from any money

8

received from other sources. Wilson speculated that in the event he was unable to pay the ordered restitution, the Bureau of Prisons would put him on "refusal status" and deny him certain privileges. See 28 C.F.R. § 545.11(d). Primarily, Wilson was concerned that, if put on "refusal status," he might lose the opportunity to spend the last several months of his sentence at a halfway house. See id. at § 545.11(d)(8), (11). On appeal, Wilson argues the district court erroneously concluded it lacked discretion to grant his requests and asks us to remand for reconsideration.

Having studied the sentencing transcript, we conclude that, taken as a whole, it indicates the district court entertained Wilson's requests, but nonetheless decided to set a payment schedule that did not incorporate the requested accommodations. At the sentencing hearing, the district court stated, "With regard to the request for deferred restitution, the request is denied. And this is mandatory restitution, and restitution will start during his period of incarceration." ROA, Vol. IV, at 11. Later, Wilson's counsel requested that the order and judgment provide restitution payments be taken only from Wilson's prison wages and not from any money received from other sources. In reference to that request, the district court stated, "I don't even know that I have the authority to do that, quite frankly." Id. at 15. Nonetheless, the district court went on to consider whether granting the request would be appropriate, stating, "the other thing that I think — that comes to my mind is, if this were to happen in every case where judges were crafting sentences dealing with restitution, the Bureau of Prisons would not be able to administer

9

it." Id. After hearing an explanation of the Bureau of Prisons' policy regarding "refusal status" from a United States Probation Officer, the court stated: "Fair enough. So I'm going to make my normal restitution order. So that request is denied." Id. at 16.

The presentence report (PSR), which the district court adopted, provided an analysis of Wilson's financial status. Although the PSR stated that Wilson's only asset was a 1979 Chevrolet Camaro with an estimated value of $200, the PSR concluded Wilson would be able to make installment payments toward restitution through the Bureau of Prisons' Inmate Financial Responsibility Program (IFRP). 28 C.F.R. § 545.10, 545.11. Under the IFRP, a portion of an inmate's wages earned via prison employment is diverted to meet an inmate's court-ordered financial obligations. 28 C.F.R. § 545.11. Wilson did not object to the analysis of his financial situation in the PSR. Nor did he provide any additional information about his financial status or obligations. He does not contend he is physically unable to work within the prison system, that there are insufficient opportunities to work, or that the district court's payment schedule is disproportionate to prison wages. Given the speculative nature of the concerns raised by Wilson at the sentencing hearing, we conclude the district court did not abuse its discretion by requiring Wilson to make restitution payments during his term of imprisonment.

### *Blakely/Booker error*

In a series of supplemental briefs, Wilson argues that the decisions in Blakely and

10

Booker require that we remand his case to the district court for resentencing. In Blakely, the Supreme Court held that in a state prosecution the Sixth Amendment requires that the maximum permissible sentence in a particular case must be determined solely by reference to "facts reflected in the jury verdict or admitted by the defendant." 124 S. Ct. at 2537. In Booker, the "Court extended the logic of Blakely to the Federal Sentencing Guidelines, holding that the Sixth Amendment requires that '[a]ny fact (other than a prior conviction) . . . necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'" United States v. Dazey, 403 F.3d 1147, 1174 (10th Cir. 2005) (quoting Booker, 125 S.Ct. at 756). "To remedy this constitutional infirmity created by applying judge-found facts to mandatory sentencing guidelines, the Court severed the provision of the Sentencing Reform Act making application of the Guidelines mandatory." Id.

In cases, such as Wilson's, in which sentencing occurred prior to Booker, we have recognized two types of sentencing errors. First, the district court may have committed what we have termed "constitutional Booker error" "by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." United States v. Gonzalez-Huerta, 403 F.3d 727, 731 (10th Cir. 2005). "As Booker makes clear, the Sixth Amendment prohibits this practice." Id. Second, the district court likely committed what we have termed "non-constitutional Booker error" "by applying

11

the Guidelines in a mandatory fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction." Id. at 731-32.

After reviewing the record on appeal, we conclude that no constitutional Booker error occurred during Wilson's sentencing. As noted in the PSR, the district court increased Wilson's offense level for each of the two counts of conviction based upon, respectively, the actual loss caused by the mail fraud and the amount of taxes that Wilson failed to report for the tax year 2001. ROA, Vol. II, PSR at 7-8. Importantly, those figures were derived directly from the allegations set forth in the superseding information, which Wilson acknowledged were true at the time he plead guilty. ROA, Vol. I, Docs. 22 (superseding information), 28 (plea agreement in which Wilson admitted "to being in fact guilty as charged in the" two counts of the superseding information). The district court also concluded, in determining Wilson's criminal history category, that the offenses of conviction were committed while Wilson was under the one-year deferred sentence imposed in Oklahoma state court for Wilson's firearm offense. ROA, Vol. II, PSR at 9. Notably, that conclusion was based on a combination of the facts admitted by Wilson as part of his plea agreement (i.e., that the mail fraud offense began in January 2001 and continued through March 2002, and that he willfully attempted to evade income taxes on or about April 15, 2002) and the information set forth in the judgment from Wilson's state court conviction. In sum, then, the record on appeal clearly indicates that the district

court did not perform any judicial factfinding in calculating Wilson's guideline range.

The record on appeal does indicate, however, that the district court committed non-constitutional <u>Booker</u> error by applying the Guidelines in a mandatory, as opposed to discretionary, fashion. Because Wilson did not raise this non-constitutional <u>Booker</u> error below, we review only for plain error. See <u>Gonzalez-Huerta</u>, 403 F.3d at 732. To establish plain error, Wilson must demonstrate that the district court (1) committed error, (2) that the error was plain, (3) that the plain error affected his substantial rights, and (4) that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. <u>Id.</u> Although we concede that Wilson can readily satisfy the first two of these prongs, we conclude he cannot satisfy either the third or fourth prongs. With respect to the third prong, we conclude, after reviewing the record on appeal, there simply is not a reasonable probability that, but for the district court's mandatory application of the Guidelines, the result of the proceeding would have been different. Although the district court sentenced Wilson at the bottom of the guideline range of 37 to 46 months, it did so only so that Wilson would receive credit for the four months he spent in the Tulsa County Jail awaiting the approval of the tax related charges. Had it not been for that period of pre-information confinement, the district court indicated it would have imposed a sentence of 42 months, in the middle of the guideline range. ROA, Vol. IV, at 6-7. As for the fourth prong of the plain error test, we have held that "we will not notice a non-constitutional error, such as the one in the case before us, unless it is both 'particularly

egregious' and our failure to notice the error would result in a 'miscarriage of justice.'" Gonzalez-Huerta, 403 F.3d at 736 (quoting United States v. Gilkey, 118 F.3d 702, 704 (10th Cir. 1997)). Wilson, like the defendant in Gonzalez-Huerta, cannot satisfy this demanding standard. In particular, we note that Wilson "received a sentence that is within th[e] national norm[s] [established in the Guidelines] and the record is devoid of any mitigating evidence." Id. at 738.

AFFIRMED.