FILED
United States Court of Appeals
Tenth Circuit

June 4, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CORLEEN CHINO,

      Defendant - Appellant.

No. 08-2241
(D.C. No. 07-CR-01330-2)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO**, Circuit Judges, and **EAGAN**[**], District Judge.

---

Corleen Chino pleaded guilty in the District of New Mexico to one count of
assault resulting in serious bodily injury pursuant to 18 U.S.C. §§ 2, 113(a)(6),
and 1153. 1 R. Doc. 120 at 2; 1 R. Doc. 11. She was sentenced to thirty-nine
months' imprisonment, three years' supervised release, and ordered to pay
restitution totaling $158,399.17 to the Indian Health Service ("IHS") and Lemuel
Rocha. 1 R. Doc. 145 at 2-3, 5. The district court ordered restitution to be made

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**]The Honorable Claire V. Eagan, U.S. District Judge, United States
District Court for the Northern District of Oklahoma, sitting by designation.

jointly and severally with her co-defendant, Karen Kaydahzinne, in monthly installments of $2,000.[1]  On appeal, Ms. Chino argues that (1) she did not waive her right to appeal her restitution order, and (2) the district court erred in imposing a restitution payment schedule that is inconsistent with her ability to pay.  The government responds that this appeal is barred by the waiver of appeal rights contained in the plea agreement, but if not, that the district court did not commit plain error or abuse its discretion in imposing the restitution payment schedule.  Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We vacate the schedule-of-payments portion of Ms. Chino's sentence and remand for the district court to determine an appropriate payment schedule.

Background

The parties are familiar with the facts of this case, so we only briefly summarize the relevant background here.  According to the Presentence Report ("PSR"), on June 4, 2007, Mr. Lemuel Rocha was stabbed multiple times within the exterior boundaries of the Mescalero Indian Reservation.  2 R. at 2-3 (Addendum), 7-13 (PSR).  Witnesses at the crime scene reported that Corleen Chino and her codefendant, Karen Kaydahzinne, were responsible for the

---

[1]  The Sentencing Transcript indicates monthly payments of $2,000, 3 R. Doc. 160 at 10 (Sent'g Tr.); however, the district court's judgment indicates monthly payments of $2,199, 1 R. Doc. 145 at 5.  We address this discrepancy later in our discussion.  See infra note 4.

stabbing.  Id. at 7 (PSR).

Mr. Rocha suffered life-threatening injuries, required extensive medical treatment, and was laid off from his job.  Id. at 7, 11-13.  The IHS paid $157,845.90 for medical services rendered to Mr. Rocha.  Id. at 21-22.  In addition, Mr. Rocha and his family incurred travel expenses in the amount of $253.27, and Mr. Rocha requested restitution in the amount of $300 for clothing removed during medical treatment.  Id.

An indictment against Ms. Chino was filed on June 26, 2007, charging her with (1) assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 2, 113(a)(6), and 1153, and (2) assault with a dangerous weapon in violation of 18 U.S.C. §§ 2, 113(a)(3), and 1153.  1 R. Doc. 11.  She pleaded guilty to the first count before a magistrate judge, and the government dismissed the second.  1 R. Doc. 120 at 2; see also 1 R. Doc. 11.  The plea agreement indicated that Ms. Chino entered her plea freely and voluntarily, 1 R. Doc. 120 at 5, and that the maximum penalty the court could impose was:

    a.     ten years in prison;

    b.     a fine not to exceed $250,000 or twice the pecuniary gain to the defendant or the pecuniary loss to the victim;

    c.     a mandatory term of supervised release for not less than three (3) years that must follow any term of imprisonment. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's supervised release could be revoked—even on the last day of the term—and the defendant

could then be returned to another period of incarceration and a new term of supervised release.);

    d.      a mandatory special penalty assessment of $100.00; and

    e.      restitution as may be ordered by the Court.

Id. at 2. The plea agreement also included the following waiver provision:

## WAIVER OF APPEAL RIGHTS

10. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.

    a. Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

Id. at 4. The clerk's minutes of the plea indicate that acceptance of the plea agreement would be deferred until a final disposition hearing by a district judge, Plea Minute Sheet, United States v. Kaydahzinne et al., No. 07-1330-BB, Doc. 124 (D.N.M. Mar. 13, 2008); however, the sentencing transcript before the district court does not indicate acceptance of the plea agreement.[2] Fed. R. Crim. P. 11(c)(4); see also Benchbook for U.S. District Court Judges 141 (5th ed.) (2007) (detailing procedure for accepting or rejecting deferred plea agreement).

The PSR identified the appropriate sentencing range and also recommended

---

[2] We note that the district court's minutes for the sentencing indicate that the plea itself was accepted. See Sentencing Minute Sheet, United States v. Kaydahzinne et al., No. 07-1330-BB, Doc. 143 (D.N.M. Sept. 17, 2008).

- 4 -

restitution, to be made jointly and severally, in the amount of $553.27 payable to Mr. Rocha and $157,845.90 payable to the IHS. 2 R. at 22 (PSR). The PSR further indicated that Ms. Chino is a graduate of Santa Fe Indian School and has completed sixty hours of course work in fire science at New Mexico State University. Id. at 18. Furthermore, from October 2006 to January 2007, she worked as a tree-trimmer at her cousin's company, earning $10 per hour. Id. It appears that Ms. Chino was unemployed from January 2007 up to the time of the offense in June 2007. Id. Moreover, Ms. Chino has no assets and several accounts in collection. Id. at 19. The PSR concluded that "it does not appear the defendant will have the ability to pay a fine." Id. An Addendum to the PSR was made on September 10, 2008, indicating Ms. Chino's objections to the PSR. Id. at 2-3 (Addendum). Specifically, she objected to the assertions that (1) the IHS qualified as a "victim" under the Mandatory Victim Restitution Act of 1996 ("MVRA") and was thus eligible for mandatory restitution, and (2) her plea agreement covers payment of restitution to such non-victims as the IHS. Id.

On September 17, 2008, at the sentencing hearing, counsel for Ms. Chino reiterated her objection to the IHS's eligibility for mandatory restitution as a "victim" under the MVRA. 3 R. Doc. 160 at 4-6 (Sent'g Tr.). In response, the court stated, "On a practical level, I have to say, I think it highly unlikely that she's going to be paying all or, even as a joint and severable part of that, frankly." Id. at 6. After Ms. Chino's counsel discussed the efforts her client was

making at self-improvement during her incarceration, counsel for the government added,

> Your Honor, the only thing that I would point out in addition
> to the comments made on restitution is that insofar as that is a
> part of sentencing, the Defendant has waived any appeal with
> regard to sentencing, and so, therefore, there probably won't
> be an appeal with respect to that.

Id. at 7.  The district court then sentenced Ms. Chino.  In pertinent part, the court ordered her to pay $157,845.95 in mandatory restitution to the IHS, and $553.27 to Mr. Rocha.[3]  3 R. Doc. 160 at 10 (Sent'g Tr.); 1 R. Doc. 145 at 5.  Restitution was ordered to be made jointly and severally with codefendant Karen Kaydahzinne, in monthly installments of $2,000.  3 R. Doc. 160 at 10 (Sent'g Tr.); 1 R. Doc. 145 at 5.  However, the court declined to impose a fine because of Ms. Chino's "lack of financial resources."  3 R. Doc. 160 at 10 (Sent'g. Tr.); see also 2 R. at 19 (PSR).  The court waived penalties and interest on the amounts owed.  3 R. Doc. 160 at 10 (Sent'g Tr.).  This appeal followed.

## Discussion

Before we address the merits of Ms. Chino's arguments on appeal, we must first determine whether the waiver of Ms. Chino's appellate rights in her plea agreement is enforceable.  See United States v. Hahn, 359 F.3d 1315, 1329 (10th

---

[3] We note that the judgment indicates restitution payable to the IHS in the amount of $157,845.90.  1 R. Doc. 145 at 5.

Cir. 2004) (en banc) (per curiam) ("If we conclude that the waiver agreement is enforceable, we will dismiss."); United States v. Nichols, 267 Fed. App'x 789, 791 (10th Cir. 2008) (unpublished). "Under Rule 11 of the Federal Rules of Criminal Procedure, the district court must accept a plea agreement before it becomes binding." Nichols, 267 Fed. App'x at 791; see United States v. Novosel, 481 F.3d 1288, 1292 (10th Cir. 2007). Without this acceptance, a plea agreement remains "a mere executory agreement which . . . does not deprive an accused of liberty or any other constitutionally protected interest." Novosel, 481 F.3d at 1292; see also Mabry v. Johnson, 467 U.S. 504, 507 (1984); United States v. Floyd, 1 F.3d 867, 870 (9th Cir. 1993); United States v. Gonzalez, 918 F.2d 1129, 1133 (3d Cir. 1990) ("It is axiomatic that a plea agreement is neither binding nor enforceable until it is accepted in open court."). We have previously recognized that "[i]t is not unusual for a . . . judge taking a plea to defer a decision on whether to accept a plea agreement when he knows that a different district judge will sentence the defendant or when a presentence report . . . will be forthcoming." United States v. Mares-Martinez, 329 F.3d 1204, 1205 (10th Cir. 2003).

In Ms. Chino's case, we can find nothing in the record to indicate that the plea agreement was accepted by a judge. The clerk's minutes indicate that the magistrate judge who took the plea deferred acceptance of the plea agreement until sentencing. See Plea Minute Sheet, United States v. Kaydahzinne et al., No.

07-1330-BB, Doc. 124 (D.N.M. Mar. 13, 2008). However, at the sentencing hearing, the district court made no mention of the plea agreement, except to ask Ms. Chino's counsel if Ms. Chino had waived her right to appeal. 3 R. Doc. 160 at 10-11 (Sent'g Tr.) ("[P]ursuant to plea agreement, the Defendant has waived the right to appeal the final sentence as is imposed on this Court under 18 United States Code Section 3742."). Nor did the district court refer to Ms. Chino's plea agreement in its written judgment; the court simply checked a box that indicated Ms. Chino "pleaded guilty to count(s) **Indictment**." 1 R. Doc. 145 at 1. The only other indication we have about acceptance is in the clerk's minutes for the sentencing, which include a box indicating that the plea was "accepted" and that appeal rights had been waived per the plea agreement. See Sentencing Minute Sheet, United States v. Kaydahzinne et al., No. 07-1330-BB, Doc. 143 (D.N.M. Sept. 17, 2008). Acceptance of the plea agreement is unsupported by the transcript of the sentencing hearing, which is included in the record on appeal. See 3 R. Doc. 160 (Sent'g Tr.). It is axiomatic that the clerk's minutes cannot alter or add to what occurred in open court. Thus, because we can find nothing in the record to indicate that the district court accepted the plea agreement, we conclude that the waiver of appellate rights is not enforceable.

In the alternative, we would find the plea agreement ambiguous on whether Ms. Chino waived her right to appeal an order of restitution. Waivers of appellate rights are governed by principles of contract law, and are generally enforceable.

See United States v. Cooper, 498 F.3d 1156, 1159 (10th Cir. 2007); Hahn, 359 F.3d at 1324-25; see also 10th Cir. R. 27.2(A)(3) ("Failure to file a timely motion to enforce a plea agreement does not preclude a party from raising the issue in a merits brief."). We construe narrowly the scope of a defendant's waiver of her right to appeal a sentence. United States v. Chavez-Salais, 337 F.3d 1170, 1173 (10th Cir. 2003). As a result, we read any ambiguities in plea agreements against the government, and in favor of a defendant's right to appeal. Cooper, 498 F.3d at 1159.

The government argues that our decision in Cooper would control. There, a defendant challenged the amount of his restitution order where he signed a plea agreement that explicitly incorporated restitution as required by the MVRA into his sentence. Id. at 1158 ("[T]he parties further agree that, as part of the sentence resulting from the defendant's plea, the Court will enter an order of restitution . . . ."). The plea agreement included an appellate waiver, stating, in relevant part, that the defendant knowingly and voluntarily waived his right to appeal or to modify his sentence or the manner in which it was determined. Id. Under those facts, we determined that the plea agreement was unambiguous that the restitution award was part of the defendant's sentence. Id. at 1159. Thus, the challenge to the amount of the restitution order clearly fell within the scope of the waiver. Id.

The facts here, however, differ from those in Cooper. The language in Ms. Chino's plea agreement is, at the very least, ambiguous with respect to whether

she knowingly waived her right to appeal the restitution order. While the portion of the agreement entitled "SENTENCING" includes "restitution as *may* be ordered by the Court," 1 R. Doc. 120 at 2 (emphasis added), the appellate waiver indicates only that Ms. Chino "knowingly waive[d] the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined)," id. at 4. Whether the sentence includes an order of restitution, with regard to the appellate waiver, is unclear.

The government argues that its statements at the hearing that restitution is a part of sentencing resolve any uncertainty as to whether Ms. Chino waived her appellate rights. Aple. Br. 6-7; see 3 R. Doc. 160 at 7 (Sent'g Tr.). At best, these statements only add to the ambiguity arising from the plea agreement's plain language. The only other discussion of the plea agreement comes from the district court at the sentencing hearing when it stated, "[P]ursuant to plea agreement, the Defendant has waived the right to appeal the final sentence as it is imposed by this Court under 18 United States Code Section 3742." 3 R. Doc. 160 at 11 (Sent'g Tr.). At no point did the district court engage in any express discussion of whether the appellate waiver encompassed an order of restitution. Thus, because we "strictly construe appeal waivers" and read any ambiguities in such waivers against the government in favor of a defendant's appellate rights, Hahn, 359 F.3d at 1325, we would not conclude that Ms. Chino's appeal falls within the scope of the waiver.

We now turn to the merits of Ms. Chino's appeal. "We review the district court's application of the MVRA *de novo*, review its factual findings for clear error, and review the amount of restitution awarded for abuse of discretion." United States v. Gallant, 537 F.3d 1202, 1247 (10th Cir. 2008) (citing United States v. Serawop, 505 F.3d 1112, 1117 (10th Cir. 2007)). However, because Ms. Chino failed to preserve her objection to the manner in which the district court arrived at the restitution payment schedule, we review for plain error. United States v. Ahidley, 486 F.3d 1184, 1188 (10th Cir. 2007); United States v. Overholt, 307 F.3d 1231, 1253 (10th Cir. 2002); see also Fed. R. Crim. P. 52(b). A showing of plain error requires (1) error, (2) that is plain, and (3) that affects substantial rights. Ahidley, 486 F.3d at 1188 n.4 (citing Johnson v. United States, 520 U.S. 461, 466-67 (1997)). If these three conditions are satisfied, we will exercise our discretion to notice a forfeited error if it "'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting Johnson, 520 U.S. at 467) (brackets omitted). Just as in the companion case United States v. Kaydahzinne, No. 08-2235, we find such error.

The MVRA requires a district judge to issue an order of restitution when imposing sentence upon a defendant convicted of a crime of violence. 18 U.S.C. § 3663A(a)(1) & (c)(1)(A)(i); U.S.S.G. § 5E1.1. To determine the total amount of restitution owed, the court must assess only the amount of the victims' losses, "without consideration of the economic circumstances of the defendant." 18

- 11 -

U.S.C. § 3664(f)(1)(A). However, a district court sets the payment schedule of the total amount owed "*in consideration of—*

> (A)  the financial resources and other assets of the defendant . . . ;
>
> (B)  projected earnings and other income of the defendant; and
>
> (C)  any financial obligations of the defendant; including obligations to dependents."

Id. § 3664(f)(2) (emphasis added). A district court may order a lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of interval and in-kind payments. Id. § 3664(f)(3)(A). In addition, a district court may order nominal periodic payments if "the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." Id. § 3664(f)(3)(B). Finally, in the event of any material change in the defendant's economic circumstances that may affect defendant's ability to pay, the defendant shall notify the court and the Attorney General. Id. § 3664(k). At such time, the court may modify the payment schedule as needed. Id.

A district court is "granted considerable discretion in structuring a payment schedule." Overholt, 307 F.3d at 1255; United States v. Wilson, 416 F.3d 1164, 1170 (10th Cir. 2005). Moreover, the plain language of the MVRA is clear: A district court must only demonstrate on the record its consideration of the factors

set out in § 3664(f)(2) when setting a restitution payment schedule. See Ahidley, 486 F.3d at 1191. "[E]xtensive remarks are not necessary"; however, "we must be able to discern from the record that this consideration has taken place." Id.; see also United States v. Lucien, 347 F.3d 45, 53-54 (2d Cir. 2003) ("[T]he record must disclose some affirmative act or statement allowing an inference that the district court in fact considered the defendant's ability to pay." (internal quotation marks omitted)). In our review of the record, we will not "'enter the zone of appellate speculation' as to whether a court has considered [the] § 3664(f)(2) factors." Ahidley, 486 F.3d at 1191 (quoting United States v. Kravchuk, 335 F.3d 1147, 1159 (10th Cir. 2003)).

Consistent with the MVRA, which requires consideration of the § 3664(f)(2) factors, our case law indicates that a restitution payment schedule should reflect a substantively reasonable and appropriate consideration of those factors. See, e.g., id. at 1194 (vacating and remanding an immediate lump-sum restitution payment with instructions for the district court to set an "appropriate payment schedule with reference to the § 3664(f)(2) factors"); United States v. Zunie, 444 F.3d 1230, 1238 (10th Cir. 2006) (same); Wilson, 416 F.3d at 1170-71 (affirming a restitution payment schedule that was not "disproportionate to prison wages"); United States v. Williams, 996 F.2d 231, 235 (10th Cir. 1993) (affirming, in pre-MVRA case, restitution schedule where, "from an objectively reasonable standpoint," defendant "possibly may be able to pay the amount

- 13 -

ordered" (internal quotation marks omitted)); United States v. Rogat, 924 F.2d 983, 985 (10th Cir. 1991) ("A restitution order will be upheld if the evidence indicates a defendant has some assets or earning potential and thus possibly may be able to pay the amount ordered."). In other words, the MVRA requirement that district courts must merely consider the § 3664(f)(2) factors is not perfunctory; we cannot uphold sentences that are imposed without a reasonable basis.

We find sufficient inconsistencies in the record now before us to establish plain error. The district court's decision to order a restitution payment schedule in the amount of $2,000 per month is not supported by, and is inconsistent with, the court's findings regarding Ms. Chino's inability to pay. The sentencing transcript indicates the district court reviewed the PSR, which concluded that Ms. Chino was indigent, 3 R. Doc. 160 at 8 (Sent'g Tr.); heard counsel's argument that Ms. Chino had earned only "[$]9 or $10 an hour" prior to incarceration, id. at 11, and counsel's request that the "Court allow some flexibility from Probation, when she gets out, to take into consideration her job prospects and circumstances," id.; and declined to impose a fine due to Ms. Chino's "lack of financial resources," id. at 10. Yet, without explanation, the district court ordered a restitution payment schedule of $2,000 per month. The district court acknowledged this inconsistency when it remarked that it was "highly unlikely that [Ms. Chino is] going to pay all or, even as a joint and severa[l] part of that,

frankly." Id. at 6. While a court may certainly comment on the likelihood of repayment, see Rogat, 924 F.2d at 985-86, we are at a loss to understand how the § 3664(f)(2) factors informed the fashioning of this payment schedule in light of the district court's other comments.

We believe that the apparent inconsistencies in the restitution phase of the sentencing affect the fairness of and public regard for the proceedings and therefore should be noticed as plain error.[4] See United States v. Olano, 507 U.S. 725, 732-35 (1993). Without question, an objection by Ms. Chino's counsel could have focused the district court on these issues, but a restitution order must reflect an informed judgment consistent with the facts of the case and the law.

For the reasons stated above, we VACATE that portion of the judgment establishing the schedule of payments and REMAND for the district court to

---

[4] In addition, we note the inconsistency between the district court's oral pronouncement of the payment schedule (requiring payments of $2,000 per month), 3 R. Doc. 160 at 11 (Sent'g Tr.), and the written judgment (requiring payments of $2,199 per month), 1 R. Doc. 145 at 5. In light of the remand, we probably need not address this issue, but note that "an orally pronounced sentence controls over a judgment . . . when the two conflict." United States v. Bowen, 527 F.3d 1065, 1080 (10th Cir. 2008) (internal quotation marks omitted); United States v. Marquez, 337 F.3d 1203, 1207 n.1 (10th Cir. 2003).

determine an appropriate payment schedule with reference to the § 3664(f)(2)

factors.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge