FILED
United States Court of Appeals
Tenth Circuit

June 4, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KAREN D. KAYDAHZINNE,

Defendant - Appellant.

No. 08-2235
(D.C. No. 07-CR-01330-1)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO**, Circuit Judges, and **EAGAN**[**], District Judge.

Karen Kaydahzinne pleaded guilty in the District of New Mexico to one
count of assault resulting in serious bodily injury pursuant to 18 U.S.C. §§ 2,
113(a)(6), and 1153. 1 R. Doc. 121 at 2; 1 R. Doc. 11. She was sentenced to
thirty-seven months' imprisonment, three years' supervised release, and ordered
to pay restitution totaling $158,399.17 to the Indian Health Service ("IHS") and
Lemuel Rocha. 1 R. Doc. 146 at 2-3, 5. The district court ordered restitution to

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**]The Honorable Claire V. Eagan, U.S. District Judge, United States
District Court for the Northern District of Oklahoma, sitting by designation.

be made jointly and severally with her co-defendant, Corleen Chino, in monthly installments of $2,000.[1]  On appeal, she argues that the district court erred in imposing a restitution amount and method of payment that are inconsistent with her ability to pay.  Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  We vacate the schedule-of-payments portion of Ms. Kaydahzinne's sentence and remand for the district court to determine an appropriate payment schedule.

Background

The parties are familiar with the facts of this case, so we only briefly summarize the relevant background here.  According to the Presentence Report ("PSR"), on June 4, 2007, Lemuel Rocha was stabbed multiple times within the exterior boundaries of the Mescalero Indian Reservation.  2 R. at 2-3 (Addendum), 7-12 (PSR).  Witnesses at the crime scene reported that Karen Kaydahzinne and her codefendant, Corleen Chino, were responsible for the stabbing.  Id. at 7 (PSR).  Ms. Kaydahzinne was arrested by FBI agents in Las Cruces, New Mexico, that same day.  Id.

As a result of the stabbing, Mr. Rocha suffered life-threatening injuries,

---

[1]  The Sentencing Transcript indicates monthly payments of $2,000, 3 R. Doc. 158 at 11 (Sent'g Tr.); however, the district court's judgment indicates monthly payments of $2,099, 1 R. Doc. 146 at 5.  We address this discrepancy later in our discussion.  See infra note 3.

required extensive medical treatment, and was laid off from his job.  <u>Id.</u> at 7, 11-13, 24-25.  The IHS paid $157,845.90 for medical services rendered to Mr. Rocha.  <u>Id.</u> at 24-25.  In addition, Mr. Rocha and his family incurred travel expenses in the amount of $253.27, and Mr. Rocha requested restitution in the amount of $300 for clothing removed during medical treatment.  <u>Id.</u> at 24.

An indictment against Ms. Kaydahzinne was filed on June 26, 2007, charging her with (1) assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 2, 113(a)(6), and 1153, and (2) assault with a dangerous weapon in violation of 18 U.S.C. §§ 2, 113(a)(3), and 1153.  1 R. Doc. 11.  She pleaded guilty to the first count before a magistrate judge, and the government dismissed the second.  1 R. Doc. 121 at 2, 5; <u>see also</u> 1 R. Doc. 11.  The plea agreement indicated that Ms. Kaydahzinne entered her plea freely and voluntarily, 1 R. Doc. 121 at 5, and that the maximum penalty the court could impose was:

    a.    ten years in prison;

    b.    a fine not to exceed $250,000 or twice the pecuniary gain to the defendant or the pecuniary loss to the victim;

    c.    a mandatory term of supervised release for not less than three (3) years that must follow any term of imprisonment. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's supervised release could be revoked—even on the last day of the term—and the defendant could then be returned to another period of incarceration and a new term of supervised release.);

    d.    a mandatory special penalty assessment of $100.00; and

e.      restitution as may be ordered by the Court.

Id. at 2.  The clerk's minutes of the plea indicate that acceptance of the plea agreement would be deferred until a final disposition hearing by a district judge, 1 R. Doc. 125; however, the sentencing transcript before the district court does not indicate acceptance of the plea agreement.[2]  Fed. R. Crim. P. 11(c)(4); see also Benchbook for U.S. District Court Judges 141 (5th ed.) (2007) (detailing procedure for accepting or rejecting deferred plea agreement).

In addition to identifying the appropriate sentencing range, the PSR also recommended restitution, to be made jointly and severally, in the amount of $553.27 payable to Mr. Rocha and $157,845.90 payable to the IHS.  2 R. at 25 (PSR).  The PSR further indicated that Ms. Kaydahzinne has an associate's degree in horticulture services, operations, management, and floral design, and that she has further training in cosmetology and as a wild land fire fighter.  Id. at 18.  In addition, prior to her incarceration, she was employed by a telemarketing firm in New Mexico, earning $7.50 per hour.  Id. at 19.  She has total liabilities of $10,046, and no assets.  Id. at 19-21.  The PSR concluded that Ms. Kaydahzinne's "current lack of employment and assets and the fact that she has several accounts in collections . . . [indicate] she does not have the ability or resources to pay a fine in this case."  Id. at 22.  An Addendum to the PSR was made on September

_____

[2]  We note that the district court's minutes for the sentencing indicate that the plea itself was accepted.  See 1 R. Doc. 144 (Sentencing Minute Sheet).

10, 2008, indicating Ms. Kaydahzinne's objections to the PSR. Id. at 2-3 (Addendum). Specifically, she objected to the PSR's recommendation that restitution be made jointly and severally. Id.

On September 17, 2008, at the sentencing hearing, counsel for Ms. Kaydahzinne reiterated her objection to restitution being made jointly and severally, arguing that the district court should apportion only one-third of the amount to Ms. Kaydahzinne based on her lesser degree of culpability. 3 R. Doc. 158 at 6, 8 (Sent'g Tr.). In addition, counsel indicated that, when imposing restitution, the court

> can consider an individual's financial needs and lack of financial earning ability. And it's very clear, when Ms. Kaydahzinne gets out of prison in two or three years, she's not going to have very good job prospects. She really has no foreseeability [sic] to pay such a tremendous amount of restitution.

Id. at 6. The court responded, "I'm not really counting on that, frankly, as I sort of indicated in the last sentencing," referring to Ms. Chino's hearing. Id. Counsel concluded her remarks by requesting that the court "modify payments and . . . reduce the amount of restitution." Id. at 7.

The district court then sentenced Ms. Kaydahzinne. In pertinent part, the court ordered her to pay $157,845.90 in mandatory restitution to the IHS, and $553.27 to Mr. Rocha. 1 R. Doc. 146 at 5. Restitution was ordered to be made jointly and severally with codefendant Corleen Chino, in monthly installments of $2,000. Id.; see 3 R. Doc. 158 at 11 (Sent'g Tr.). However, the court declined to

impose a fine because of Ms. Kaydahzinne's "lack of financial resources." 3 R. Doc. 158 at 11 (Sent'g. Tr.); see also 2 R. at 27 (PSR). The court waived penalties and interest on the amounts owed. 3 R. Doc. 158 at 11 (Sent'g Tr.).

On appeal, Ms. Kaydahzinne argues that the district court erred in imposing a restitution amount and method of payment that were inconsistent with her ability to pay. She requests that we vacate the restitution order and remand for consideration of her financial circumstances in determining the restitution payment schedule.

### Discussion

Although the parties have not raised the effectiveness of Ms. Kaydahzinne's appellate waiver, we must note that there is no statement by a judge that indicates her plea agreement was accepted by the district court. "Under Rule 11 of the Federal Rules of Criminal Procedure, the district court must accept a plea agreement before it becomes binding." United States v. Nichols, 267 Fed. App'x 789, 791 (10th Cir. 2008) (unpublished); see United States v. Novosel, 481 F.3d 1288, 1292 (10th Cir. 2007). Without this acceptance, a plea agreement remains "a mere executory agreement which . . . does not deprive an accused of liberty or any other constitutionally protected interest." Novosel, 481 F.3d at 1292; see also Mabry v. Johnson, 467 U.S. 504, 507 (1984); United States v. Floyd, 1 F.3d 867, 870 (9th Cir. 1993); United States

- 6 -

v. Gonzalez, 918 F.2d 1129, 1133 (3d Cir. 1990) ("It is axiomatic that a plea agreement is neither binding nor enforceable until it is accepted in open court."). We have previously recognized that "[i]t is not unusual for a . . . judge taking a plea to defer a decision on whether to accept a plea agreement when he knows that a different district judge will sentence the defendant or when a presentence report . . . will be forthcoming." United States v. Mares-Martinez, 329 F.3d 1204, 1205 (10th Cir. 2003).

Just as in the companion case United States v. Chino, No. 08-2241, the clerk's minutes indicate that the magistrate judge who took the plea deferred acceptance of the plea agreement until sentencing. 1 R. Doc. 125 (Plea Minute Sheet). However, at the sentencing hearing, the district court made no mention of the plea agreement, except to state that both defendants were "getting a pretty good deal on the plea agreement, frankly," and to acknowledge the waiver of appeal. 3 R. Doc. 158 at 8, 11 (Sent'g Tr.). Nor did the district court refer to Ms. Kaydahzinne's plea agreement in its written judgment; the court simply checked a box that indicated Ms. Kaydahzinne "pleaded guilty to count(s) **1 of Indictment**." 1 R. Doc. 146 at 1. The only other indication we have about acceptance is in the clerk's minutes for the sentencing, which include a box indicating that the plea was "accepted" and that appeal rights had been waived under the plea agreement. See 1 R. Doc. 144 (Sentencing Minute Sheet). Acceptance of the plea agreement is unsupported by the transcript of the sentencing hearing, which is included in

the record on appeal.  See 3 R. Doc. 158 (Sent'g Tr.).  It is axiomatic that the clerk's minutes cannot alter or add to what occurred in open court.  However, because the parties have not raised this issue on appeal, and the government does not rely on the plea agreement, we need not make a determination on the effectiveness of Ms. Kaydahzinne's appellate waiver.

We now turn to the merits of Ms. Kaydahzinne's appeal.  "We review the district court's application of the [Mandatory Victims Restitution Act] *de novo*, review its factual findings for clear error, and review the amount of restitution awarded for abuse of discretion."  United States v. Gallant, 537 F.3d 1202, 1247 (10th Cir. 2008) (citing United States v. Serawop, 505 F.3d 1112, 1117 (10th Cir. 2007)).  However, the parties agree that Ms. Kaydahzinne did not object to the district court's monthly payment plan, nor did she explicitly request a nominal payment plan as provided for by 18 U.S.C. § 3664(f)(3)(B).  Because she did not raise these issues before the district court, we review the imposition of the $2,000 monthly payment plan for plain error.  United States v. Ahidley, 486 F.3d 1184, 1188 (10th Cir. 2007); United States v. Overholt, 307 F.3d 1231, 1253 (10th Cir. 2002); see also Fed. R. Crim. P. 52(b).  To succeed on plain error review, there must be (1) error, (2) that is plain, and (3) that affects substantial rights.  Ahidley, 486 F.3d at 1188 n.4 (citing Johnson v. United States, 520 U.S. 461, 466-67 (1997)).  If these three conditions are satisfied, we will exercise our discretion to notice a forfeited error if it "'seriously affects the fairness, integrity, or public

reputation of judicial proceedings.'" Id. (quoting Johnson, 520 U.S. at 467)

(brackets omitted). In Ms. Kaydahzinne's case we find such error.

Under the Mandatory Victims Restitution Act of 1996 ("MVRA"), when

imposing sentence upon a defendant convicted of a crime of violence, a district

judge is required to order restitution in addition to or in lieu of any other penalties

imposed. 18 U.S.C. § 3663A(a)(1) & (c)(1)(A)(i); see also U.S.S.G. § 5E1.1.

The probation officer shall include in its PSR "information sufficient for the court

to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a).

In addition, the defendant shall provide to the probation officer an affidavit fully

describing her financial resources. Id. § 3664(d)(3). To determine the total

amount of restitution owed, the court must assess only the amount of the victims'

losses, "without consideration of the economic circumstances of the defendant."

Id. § 3664(f)(1)(A). However, a district court sets the payment schedule of the

total amount owed "*in consideration of—*

> (A)    the financial resources and other assets of the defendant . . . ;
>
> (B)    projected earnings and other income of the defendant; and
>
> (C)    any financial obligations of the defendant; including
>        obligations to dependents."

Id. § 3664(f)(2) (emphasis added). A district court may order a lump-sum

payment, partial payments at specified intervals, in-kind payments, or a

combination of interval and in-kind payments. Id. § 3664(f)(3)(A). In addition, a

district court may order nominal periodic payments if "the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments."  Id. § 3664(f)(3)(B).  Finally, in the event of any material change in the defendant's economic circumstances that may affect defendant's ability to pay, the defendant shall notify the court and the Attorney General.  Id. § 3664(k).  At such time, the court may modify the payment schedule as needed.  Id.

A district court is "granted considerable discretion in structuring a payment schedule."  Overholt, 307 F.3d at 1255; United States v. Wilson, 416 F.3d 1164, 1170 (10th Cir. 2005).  Moreover, the plain language of the MVRA is clear: A district court must only demonstrate on the record its consideration of the factors set out in § 3664(f)(2) when setting a restitution payment schedule.  See Ahidley, 486 F.3d at 1191.  "[E]xtensive remarks are not necessary"; however, "we must be able to discern from the record that this consideration has taken place."  Id.; see also United States v. Lucien, 347 F.3d 45, 53-54 (2d Cir. 2003) ("[T]he record must disclose some affirmative act or statement allowing an inference that the district court in fact considered the defendant's ability to pay." (internal quotation marks omitted)).  In our review of the record, we will not "'enter the zone of appellate speculation' as to whether a court has considered [the] § 3664(f)(2) factors."  Ahidley, 486 F.3d at 1191 (quoting United States v. Kravchuk, 335 F.3d

- 10 -

1147, 1159 (10th Cir. 2003)).

Consistent with the MVRA, which requires consideration of the § 3664(f)(2) factors, our case law indicates that a restitution payment schedule should reflect a substantively reasonable and appropriate consideration of those factors. See, e.g., id. at 1194 (vacating and remanding an immediate lump-sum restitution payment with instructions for the district court to set an "appropriate payment schedule with reference to the § 3664(f)(2) factors"); United States v. Zunie, 444 F.3d 1230, 1238 (10th Cir. 2006) (same); Wilson, 416 F.3d at 1170-71 (affirming a restitution payment schedule that was not "disproportionate to prison wages"); United States v. Williams, 996 F.2d 231, 235 (10th Cir. 1993) (affirming, in pre-MVRA case, restitution schedule where, "from an objectively reasonable standpoint," defendant "possibly may be able to pay the amount ordered" (internal quotation marks omitted)); United States v. Rogat, 924 F.2d 983, 985 (10th Cir. 1991) ("A restitution order will be upheld if the evidence indicates a defendant has some assets or earning potential and thus possibly may be able to pay the amount ordered."). In other words, the MVRA requirement that district courts must merely consider the § 3664(f)(2) factors is not perfunctory; we cannot uphold sentences that are imposed without a reasonable basis.

In this case, various inconsistencies in the record establish plain error. The district court's decision to order a restitution payment schedule in the amount of

$2,000 per month is not supported by, and is inconsistent with, the court's findings regarding Ms. Kaydahzinne's inability to pay. The sentencing transcript indicates the district court reviewed the PSR, which concluded that Ms. Kaydahzinne was indigent, 3 R. Doc. 158 at 9 (Sent'g Tr.); heard counsel's argument that Ms. Kaydahzinne would not have "very good job prospects" upon her release from prison and that she did not have any foreseeable ability "to pay such a tremendous amount of restitution," id. at 6; and declined to impose a fine due to Ms. Kaydahzinne's "lack of financial resources," id. at 13. Yet, without explanation, the district court ordered a restitution payment schedule of $2,000 per month. The district court acknowledged this inconsistency when it remarked that it was "not really counting on" Ms. Kaydahzinne's satisfaction of the restitution order. Id. at 6. While a court may certainly comment on the likelihood of repayment, see Rogat, 924 F.2d at 985-86, we are at a loss to understand how the § 3664(f)(2) factors informed the fashioning of this payment schedule in light of the district court's other comments.

We believe that the apparent inconsistencies in the restitution phase of the sentencing affect the fairness of and public regard for the proceedings and therefore should be noticed as plain error.[3] See United States v. Olano, 507 U.S.

---

[3] In addition, we note the inconsistency between the district court's oral pronouncement of the payment schedule (requiring payments of $2,000 per month), 3 R. Doc. 158 at 11 (Sent'g Tr.), and the written judgment (requiring payments of $2,099 per month), 1 R. Doc. 146 at 5. In light of the remand, we

725, 732-35 (1993). Without question, an objection by counsel could have focused the district court on these issues, but a restitution order must reflect an informed judgment consistent with the facts of the case and the law.

For the reasons stated above, we VACATE that portion of the judgment establishing the schedule of payments and REMAND for the district court to determine an appropriate payment schedule with reference to the § 3664(f)(2) factors.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

---

probably need not address this issue, but note that "an orally pronounced sentence controls over a judgment . . . when the two conflict." United States v. Bowen, 527 F.3d 1065, 1080 (10th Cir. 2008) (internal quotation marks omitted); United States v. Marquez, 337 F.3d 1203, 1207 n.1 (10th Cir. 2003).